UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JENNIFER GROVES DRAGON,

Plaintiff,

v.     4:10-cv-001

QUICKEN LOANS, INC.,

Defendant.

## ORDER
## I. INTRODUCTION

On December 4, 2009, Plaintiff Jennifer Groves Dragon ("Dragon") filed a complaint as a putative class representative in the State Court of Bryan County, Georgia, against Quicken Loans, Inc. ("Quicken"). *See* Doc. 1-2. In the Complaint, Dragon alleges that Quicken violated the National Housing Act ("NHA") by improperly charging mortgage interest at the time of closing as opposed to offering her a loan under Section 238(c) of the NHA. *See id.*, ¶ 2. A loan under Section 238(c) would have allowed her to make interest payments over time, rather than as "an upfront assessment." Doc. 14 at 2.

Quicken removed the action to this Court on January 11, 2010. *See* Doc. 1. On July 12, 2010, Dragon filed a Motion for Leave to File Motion for Class Certification, *see* Doc. 12, and a Motion for Class Certification, *see* Doc. 13. The Magistrate Judge granted Dragon's Motion for Leave to File Motion for Class Certification out of time on August 6, 2010. *See* Doc. 15. Dragon's Motion for Class Certification is currently pending before the Court.

## II. BACKGROUND FACTS

The NHA governs, among other things, the way certain borrowers are charged interest on a home loan. *See Moses v. Banco Mortg. Co.*, 778 F.2d 267, 272 (5th Cir. 1985) ("The 'fundamental design' of the National Housing Act is to create a system of mortgage repayment insurance."). The two NHA sections at issue here are Section 203(b) and Section 238(c).

According to Dragon, Quicken improperly issued her a home loan which required the payment of mortgage interest at the time of closing. *See* Doc. 1-2, ¶ 2. She claims that she was charged a mortgage interest payment of $2,992. *See id.*; Doc. 13 at 4. Dragon alleges that she was entitled to a home loan issued pursuant to Section 238(c), which would have allowed her to pay the mortgage interest over time rather than at the time of closing. *See* Doc. 1-2, ¶¶ 11-18; Doc. 14 at 2.

Section 238(c) applies to mortgages "executed in connection with the construction, repair, rehabilitation, or purchase of property located near any installation of the Armed Forces of the United States in federally impacted areas . . ." 12 U.S.C. § 1715z-3(c)(1). Dragon alleges that Bryan County, Georgia, the county in which the home she purchased with the loan from Quicken is located, is one of six counties in the country that has been designated as a "Military Impact Area" under Section 238(c). Doc. 1-2, ¶ 1.[1] A

---

[1] Dragon states that the other five counties designated as Military Impact Areas are: Liberty County and

Military Impact Area designation, in turn, allegedly entitles residents of the county to borrow money pursuant to Section 238(c). *See* Doc. 13 at 3 (stating that "[t]he benefit of offering a loan through FHA's section 238(c) package is that a borrower cannot be charged up front mortgage insurance premiums ('UFMIP')").

Based on her personal entitlement to relief, Dragon purports to represent the claims of a class, defined as follows:

> All persons who lived in the counties of Bryan, Liberty or Camden in Georgia or in Lewis, St. Lawrence, or Jefferson Counties in New York and who financed their property under an FHA loan with Defendant and were charged Up Front Mortgage Insurance Premiums ("UFMIP").

Doc. 13 at 2.[2]

> Excluded from this Class are those persons who hold or have held executive or legal positions with Defendant, the spouses or children of any such person, the spouses or children of Plaintiff's counsel, the Honorable B. Avant Edenfield, Honorable G. R. Smith, and any other judge, magistrate or special master to whom this case may be assigned or referred, in whole or in part, as well as their spouses and children.

*Id.*

Dragon claims that Quicken has made at least 145 loans under Section 203(b) to residents of Military Impact Areas that should have been made under Section 238(c). *See id.* at 3. Quicken allegedly made the loans under the wrong section of the NHA due to the fact that it did not have the proper computer software to make loans under Section 238(c). *See id.* at 3-4.

Dragon claims that Quicken "violated FHA rules and regulations by charging her UFMIP, since she resided in a military impact area." *Id.* at 4. She continues: "Defendant could only offer 238(c) loans to persons in military impact areas, and that for approximately two (2) years, Defendant offered only the traditional 203(b) to such persons and improperly charged UFMIP in connection therewith." *Id.* (emphasis in original).

Dragon has now moved this Court to certify the class of plaintiff that she alleges is entitled to relief on this basis.

### III. MOTION FOR CLASS CERTIFICATION

In order for this Court to certify the proposed class, Dragon must demonstrate that all the prerequisites of Federal Rule of Civil Procedure 23(a) have been met. *See Smith v. Georgia Energy USA, LLC*, 259 F.R.D. 684, 689 (S.D. Ga. 2009) (stating

---

Camden County, Georgia; and Lewis County, St. Lawrence County and Jefferson County, New York. *See* Doc. 13 at 3.

[2] The class definition appearing in the Complaint varied slightly from the version cited, which appeared in the Motion for Class Certification. The Complaint defined the class as: "All persons who lived in Bryan, Liberty or Camden Counties in Georgia, or Lewis, St. Lawrence or Jefferson Counties in New York who were charged upfront premiums for mortgage protection insurance and financed their property under an F.H.A. loan with the Defendants [sic]." Doc. 1-2 ¶ 10.

2

that "the party moving for class certification bears the burden of establishing" compliance with Rule 23) (citing *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997). "Rule 23(a) requires numerosity, commonality, typicality, and adequacy of representation." *Id.*

If she can show that the requirements of Rule 23(a) are satisfied, Dragon must then establish that at least one of the three bases for certification set forth in Rule 23(b) is satisfied. *See id. See also Hines v. Widnall*, 334 F.3d 1253, 1255 (11th Cir. 2003) ("In order to certify a class under the FRCP, all of the requirements of Rule 23(a) must be met, as well as one requirement of rule 23(b)).

"Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *See Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 n.15 (11th Cir. 2003); *see also Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000) ("It was within the court's discretion to consider the merits of the claims before their amenability to class certification.") (citations omitted).

The Court has broad discretion to determine whether class certification is proper, and its decision will only be reversed for an abuse of that discretion. *See Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1189 (11th Cir. 2009).

### A. Implied Cause of Action

As an initial matter, Quicken argues that the Court should decline to certify the class because "there is no implied cause of action to support Plaintiff's claims." Doc. 14 at 4.

A number of courts have denied motions for class certification on the basis that no claim existed, though most of these decisions have involved preliminary resolution of the merits of the case on a dispositive motion. *See, e.g., Green v. Holland*, 480 F.3d 1216, 1228 n.9 (11th Cir. 2007) (noting that motion for class certification was moot because summary judgment was properly granted against the putative class representative); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1297 (11th Cir. 2005) ("Because we have found that summary judgment was properly granted as to the underlying claims of the class representatives, the issue of class certification is moot."); *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000) ("With no meritorious claims, certification of those claims is moot."); *Smith v. Fairbanks Capital Corp.*, 299 B.R. 687, 688 (S.D. Ga. 2003) (noting the court's discretion to consider motion to dismiss before motion for class certification because "with no meritorious claims, certification of those claims as a class action is moot") (citation omitted).

Here, Quicken has not filed a motion to dismiss; instead, it essentially asks the Court to deny certification on the basis that Dragon has failed to state a claim on which relief may be granted. *See* Doc. 14 at 4.

Some persuasive authority exists for denying class certification, without consideration of a dispositive motion, on the basis that no implied private right of action existed. *See, e.g., Westlake v. Abrams*, 98 F.R.D. 1, 7 (N.D. Ga. 1981) (denying "plaintiff's motion for class certification inasmuch as it relies on the [Commodity Futures Trading Commission] Act as no implied cause of action exists thereunder in this circuit"); *Zanni v. Lippold*, 119 F.R.D. 32, 34 (C.D. Ill. 1988) (denying class certification because no implied private right of action existed for injunctive relief under the Fair Debt Collection Practices Act); *Strong v. Nat'l Credit Mgmt. Co.*, 600 F. Supp. 46, 47 (E.D. Ark. 1984) (denying class certification because no implied private right of action existed for injunctive relief under the Fair Debt Collection Practices Act).

The Court is mindful, however, that denying certification on this basis plays close to the line drawn between proper consideration of the merits of a case and improper resolution of a case on the merits at the class certification stage. *See Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 n.15 (11th Cir. 2003) (noting that even if courts consider the merits in order to decide whether class certification is appropriate, "the trial court should not determine the merits" of the case).

The Court has serious doubts that Dragon or any other putative class member will be able to assert a valid private cause of action under Section 238(c). Quicken has not cited to authority specifically holding that a private right of action should not be implied under Section 238(c), and the Court has not found any decisions directly on point. A number of courts have, however, declined to imply private rights of action under the NHA. *See, e.g., Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 361 (5th Cir. 1977) ("No evidence exists demonstrating that Congress intended to create a private cause of action under the National Housing Act.");[3] *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 758-59 (5th Cir. 1987) ("Our examination of the *Cort* factors leads us to conclude that no private cause of action can be implied from the National Housing Act."); *Moses v. Banco Mortg. Co.*, 778 F.2d 267, 272 n.2 (5th Cir. 1985) (holding that no implied private right of action exists under the NHA and noting that "[t]he District of Columbia, First, Sixth and Ninth Circuits have held that the Housing Act and regulations promulgated thereunder do not satisfy the four-part *Cort* test, and thus have refused to create a right of action for private parties who wish to sue to enforce the statute or regulations promulgated thereunder") (citations omitted).

Moreover, Quicken's analysis concluding that no private right of action should be read into Section 238(c) under *Cort* and *Touche* may be correct. *See* Doc. 14 at 4-5 (analyzing whether an implied cause of action exists under the factors set forth in *Cort v. Ash*, 422 U.S. 66 (1975) and *Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979)).

---

[3] *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981) (noting that the Eleventh Circuit has adopted as binding decisions of the former Fifth Circuit rendered prior to October 1, 1981).

4

It is this Court's view that, as a matter of logic and in the interest of preserving the resources of the Court and the parties, the fact that no valid cause of action has been asserted would justify denying class certification. Because doing so would dispose of this case on the merits when only a motion for class certification is pending before the Court, however, the propriety of such a decision is not entirely clear.

The Court, therefore, declines to deny certification on this basis.

### B. Class Certification Under Rule 23

Assuming, without deciding that a private right of action should be read into Section 238(c), Dragon's Motion for Class Certification still fails.

As noted above, to satisfy Rule 23(a), Dragon must demonstrate "numerosity, commonality, typicality, and adequacy of representation." *Smith v. Georgia Energy USA, LLC*, 259 F.R.D. 684, 689 (S.D. Ga. 2009). *See also* Doc. 13 at 5 (acknowledging that all four prongs of Rule 23(a) must be satisfied in order for class certification to be proper).

The Court need not discuss all four requirements at length, as it finds that Dragon has failed to satisfy the numerosity requirement.

Rule 23(a)(1) requires that members of a class must be "so numerous that joinder of all members is impracticable." In deciding whether joinder is practicable, courts look to a number of factors, such as "the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986).

In the Complaint, Dragon states that she "seeks to certify a class which consists of everyone who has been improperly charged an upfront lump sum mortgage insurance premium; and who, [sic] took out an FHA loan through the Defendant." Doc. 1-2, ¶ 10(a).

Here, Dragon claims that Quicken made at least 145 loans to potential class members residing in both Georgia and New York. *See* Doc. 13 at 7. Dragon argues that the number of potential members, together with the geographic range of those members would make joinder impracticable, satisfying Rule 23(a)(1). *See id.*

In opposition, Quicken has presented evidence that Dragon is one of only nine potential class members who actually *purchased* a home with their Quicken loans, and that the remaining 136 potential class members *refinanced* already-existing mortgages with the Quicken loans. *See* Doc. 14 at 2, 7-8. *See also* Doc 14-1 at 5-6 (Affidavit of Clint Bonknowski stating that only nine of 145 loans were purchase loans), and Doc. 14-1 at 12-15 (Statement of Quicken FHA loans in Military Impact Areas between 2007 and June 2009, indicating nine purchase loans and 136 refinance loans). Quicken argues that, because refinancing a home is not "construction, repair, rehabilitation, or purchase of property" within the meaning of Section 238(c), the maximum number of class members is nine. *See* Doc. 14 at 7-8 (citing 12 U.S.C. § 1715z-3(c)(1)).

Few, if any, reported decisions have analyzed this language of the NHA, but the Court finds that the language is clear and unambiguous, and thus should be read according to its plain meaning. *See Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1222 (11th Cir. 2009) ("In construing a statute we must begin, and often should end as well, with the language of the statute itself. We do this because we presume that Congress said what it meant and meant what it said.") (citations omitted). "Where the language of a statute is unambiguous, as it is here, we need not, and ought not, consider legislative history." *Id.* (citations omitted).

A straightforward reading of the statute indicates that, contrary to Dragon's class definition, more than just living in one of the Military Impact Areas is necessary to be eligible for financing under Section 238(c)—the statute also limits the purposes of qualifying loans to "construction, repair, rehabilitation or purchase." 12 U.S.C. § 1715z-3(c)(1). Congress limited the scope of Section 238(c), and simply did not choose to make refinancing loans eligible for special treatment. *See Settlement Funding, LLC v. Jamestown Life Ins. Co.*, 78 F. Supp. 2d 1349, 1358 (N.D. Ga. 1999) ("When a legislative body specifically lists certain items in a statute, the statute generally is not interpreted to encompass other items not specifically listed.") (citing *United States v. Koonce*, 991 F.2d 693, 698 (11th Cir. 1993)).

Because loans made for the purpose of refinancing are ineligible for the interest payment arrangement authorized by Section 238(c), Dragon has presented evidence of only nine potential class members who may have been harmed because Quicken offered loans under Section 203(b) rather than Section 238(c).[4] In other words, individuals who executed loans with Quicken for the purpose of refinancing were not "improperly charged an upfront lump sum mortgage insurance premium," and therefore, are not part of the class, even under Dragon's definition. Doc. 1-2, ¶ 10(a).

The Court, then, must decide whether nine parties satisfy Rule 23's numerosity requirement. "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (citation omitted). Both Dragon and Quicken basically agree with these benchmarks. *See* Doc. 13 at 8; Doc. 14 at 8 (Quicken cites authority stating that fewer than 25 class members is insufficient to show numerosity).

The Court holds that nine potential class members is insufficient to satisfy the numerosity requirement.

Because Dragon has not established all four requirements of Rule 23(a), the Court need not discuss the requirements of Rule 23(b).

---

[4] Dragon has offered no evidence, or even argument, that any of the refinancing loans were used for permissible purposes. This is not to say that if such proof was presented that the Court would have granted certification, as the need to demonstrate the use of each loan may prevent certification under the commonality or other prongs of Rule 23.

Dragon's Motion for Class Certification is, hereby, *DENIED*.

This 7th day of October 2010.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA